Bridgman Realty Corporation *v.* Philadelphia,
Appellant.

Argued January 8, 1935.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Joseph H. Lieberman,* Assistant City Solicitor, with him *O. Charles Brodersen,* Assistant City Solicitor, and *David J. Smyth,* City Solicitor, for appellant.

*Bertram G. Frazier* and *B. Graeme Frazier, Jr.,* of *Frazier & Frazier,* with them *Tustin & Wesley,* for appellee.

OPINION BY MR. JUSTICE LINN, February 4, 1935:

This appeal is from judgment on a verdict for plaintiff, whose property was damaged by the change of grade of 30th Street and the construction of a viaduct within the street lines. The damage was assessed as of May 29, 1930.

By ordinances of July 2, 1925, and December 19, 1927,[1] provision was made, inter alia, for extensive changes and improvements in city streets in and about the post office and Pennsylvania Railroad Station, since constructed in the vicinity of 30th and Market Streets. Plaintiff owned a tract of land, 80 feet wide, fronting on 30th Street and extending westward 372 feet to 31st Street. The lot was 133 feet south of Chestnut Street, somewhat more than that distance north of Walnut Street, and parallel with both. On it, facing 30th Street, was constructed a 5-story concrete building containing 448,000 cubic feet and, to the rear, connected with the first building, was a 2-story concrete building containing 204,848 cubic feet, with a railway siding. Pursuant to the ordinances, the grade of Chestnut Street, which had formerly intersected 30th Street at grade, was raised; the grade of 30th Street was depressed 2.48 feet at the north line of plaintiff's property and 1.85 feet at the south line. A viaduct was constructed in the lines of 30th Street (houseline to houseline) from Walnut Street on the south to and across Chestnut Street

---

[1] See ordinances and city solicitor's opinions, 1925, pages 580-98 and Ibid., 1927, pages 684-96.

on the north. This viaduct passed the front of plaintiff's buildings at an incline and on a line between the second and third stories of the 30th Street front.

Viewers, appointed in 1930, filed their report in June, 1933. Both sides appealed. In the common pleas, witnesses for plaintiff fixed the damages (not including damage for delay) at sums varying from $111,400 to $115,650; whereas witnesses called by the city (in substitution for those called by the city before the viewers, who were not called in the common pleas) fixed the damage at $3,000, the property, as the city's brief states, being "depreciated only by cost of adjustment" to the new grades of 30th Street at the ground and the viaduct levels. The jury found for plaintiff in the sum of $72,000, for which judgment was entered after argument before the three judges sitting in banc. The city appeals, and complains principally of rulings on evidence. The assignments of error are so destitute of merit that little need be said in dismissing them.

The issue depended on the market value of the property before and unaffected by the exercise of the right of emiment domain and its market value immediately afterward and as affected thereby. Both parties sought to show this by expert witnesses. In direct examination of such witnesses called by plaintiff, they were asked and answered questions, of which the following quotation from the record is a typical example: "Q. Are you familiar with the sales that were made in this neighborhood prior to this change? A. I am. I have some of the sales here. Q. And you know the prices at which the sales were made? A. Yes. Q. What sales did you consider? Not the prices. (Objected to.) (Objection overruled.) (Exception allowed.) Q. Don't give the prices. A. I understand. I considered the sale of property northeast corner 30th and Chestnut Streets by The Pennsylvania Cold Storage and Market Company to the Manor Real Estate and Trust Company on June 13, 1930. In connection with that property there were other conveyances

made afterwards by the Manor Real Estate Company to the City of Philadelphia. On June 11, 1930, I considered a sale by Edward O'Malley to the Manor Company. Q. Where is that property? A. The east side of 30th, just south of Chestnut. On January 9, 1930, a sale by Van Sciver to the Manor Company, the east side of 30th Street, 150 feet south of Chestnut. Q. That is right across from our property, isn't it? A. Yes. March 14, 1930, a sale by Wetherill and Brothers to the Manor Company, the east side of 30th Street, 291 feet south of Chestnut."

Appellant contends that the learned trial judge erred in permitting the witnesses, in qualifying themselves to testify, to say that they had considered certain sales; the basis of the objection is said to be "that it would lead to the investigation of 'collateral issues as numerous as the sales.' " It may be noted that the objection was not made until the third of plaintiff's witnesses on the subject was on the stand, though both preceding witnesses had likewise testified that they had considered sales of neighboring property. No basis for the objection appears. The witness was not asked about the terms and conditions of the sales, which, if disputed, might result in collateral inquiries; the fact of the sales alone was stated. Knowledge of sales, near in point of time and location, is an important element in qualification; and, if rightly used (which cross-examination may determine), must be of assistance in forming opinion; whereas ignorance on the subject may destroy the value of the opinion of such witnesses; its relevancy cannot be denied. See generally Pittsburgh, etc., R. R. Co. v. Vance, 115 Pa. 325, 8 A. 764; Michael v. Crescent Pipe Line Co., 159 Pa. 99, 28 A. 204; Gorgas v. Phila., etc., R. R. Co., 215 Pa. 501, 64 A. 680; Girard Trust Co. v. Phila., 248 Pa. 179, 93 A. 947; Llewellyn v. Sunnyside Coal Co., 255 Pa. 291, 99 A. 869; Hoffman v. Berwind-White Coal Mining Co., 265 Pa. 476, 109 A. 234; McSorley v. Avalon Boro. School Dist., 291 Pa. 252, 139 A. 848; Summers v. Lancaster Co., 308 Pa. 379,

162 A. 256; Westinghouse Air Brake Co. v. Pittsburgh, 316 Pa. 372.

The second assignment complains that, on plaintiff's objection, the learned trial judge stopped cross-examination on the effect of municipal change in the regulation of traffic on Chestnut Street after the date of the changes of grade. Our attention has been called to nothing which justified the proposed cross-examination; so far as appears, there was no reason for it. Nor can we see any ground for the city's complaint that cross-examination was stopped as to the effect of the vacation of 30th Street north of Market Street. Between Chestnut Street, which is north of plaintiff's land, and Market Street, still further north, Ludlow Street affords access at grade to 30th Street at its ground level, as distinguished from the 30th Street viaduct (cf. Hedrick v. Harrisburg, 278 Pa. 274, 122 A. 281; Spang & Co. v. Com., 281 Pa. 414, 126 A. 781). Plaintiff's expert witnesses testified that, in estimating the damage resulting from the change of grade in front of plaintiff's property, they did not consider the effect of the vacation of the street north of Market Street. The ordinances and the plans in evidence disclosed to the jury that changes and improvements completely transforming a large city area were made and in contemplation. The fact that a street, some distance away, was vacated, or otherwise changed, could not, perhaps, be kept from the jury in its general view of the territory involved, but the scope of examination and cross-examination of the witnesses with respect to it was necessarily for the trial judge: Cf. Thompson v. American Steel & Wire Co., 317 Pa. 7.

Appellant complains that evidence was received of the cost of adjusting plaintiff's building to conform to the new grade of 30th Street at the ground level and also at the level of the viaduct. This was not received as an independent item of damage: Cf. Chambers v. South Chester Boro., 140 Pa. 510, 21 A. 409. As no land was taken from plaintiff, McSorley v. Avalon Boro. School Dist.,

supra, is not controlling. The expert witnesses on both sides stated that, in arriving at the sums which they gave as the difference between the market values before and after, they considered the necessity and probable cost of adjustments to the new conditions. The city conceded that, unless adjusted, the usefulness of the building was impaired.[2] The evidence was admissible as an element in the change in value to guide the jury in weighing the expert testimony: Dawson v. Pittsburgh, 159 Pa. 317, 325, 28 A. 171; Coons v. McKees Rocks Boro., 243 Pa. 340, 343, 90 A. 141; Donahue v. Punxsutawney Boro., 298 Pa. 77, 84, 148 A. 41.

We have considered the remaining complaints and all agree that none merits discussion.

Judgment affirmed.

---

[2] The following answer of one of the city's witnesses, in direct examination, is typical of the evidence of the city's witnesses: "And what is the amount of your damage? A. $3,000. That is the amount of money necessary to connect the third floor with the upper level of the viaduct, and adjust the first floor to the new grade, as was mentioned in the testimony given by Mr. Platt. My figure is $3,000 for both those adjustments."